UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

24cr323 SRN/DJF

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>       v.<br><br>JOSEPH RICHARD MORIN,<br><br>             Defendant. | **INDICTMENT**<br><br>18 U.S.C. § 1341<br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 2461(c) |

THE UNITED STATES GRAND JURY CHARGES THAT:

1.    At times relevant to this Indictment:

   a.    Company A is a business based in Minneapolis, Minnesota.

   b.    The Hilton Garden Inn – Fort Myers Airport ("Hilton Garden Inn") is a hotel and events space in Fort Myers, Florida.

   c.    Gateway FS Hotel LLC is a company that does business as the Four Seasons Hotel Minneapolis ("Four Seasons") and operates a hotel and events space in Minneapolis, Minneosta.

   d.    D'Amico Holding Company, Inc. ("D'Amico") is a restaurant and catering company based in Minneapolis, Minnesota.

   e.    Defendant MORIN was a Business Events Specialist at Company A. In that role, he was responsible for managing a program whereby Company A sold travel packages to individuals.

   f.    Individual 1 was a person with an ongoing business relationship with Company A.

SCANNED
DEC 10 2024
U.S. DISTRICT COURT MPLS

## Counts 1-4
### (Mail Fraud)

2.  From in or about April 2023 through in or about May 2024, in the State and District of Minnesota, and elsewhere, the defendant,

**JOSEPH RICHARD MORIN**,

did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

3.  It was part of the scheme that defendant MORIN offered potential customers unauthorized discounts on the price of travel packages sold by Company A. MORIN advised those customers that they could get such discounts by paying for their travel package by check instead of by credit card. MORIN instructed those customers, including Individual 1, to mail their checks to Company A, at MORIN's attention.

4.  It was further part of the scheme that, upon receiving those mailed checks, defendant MORIN deposited them into his personal bank account instead of providing them to Company A.

5.  It was further part of the scheme that MORIN created a discount code that enabled the customers to book their tickets online, through Company A's booking system, without submitting any payment via credit card. Company A had designed the booking system for customers to buy their travel packages online via credit card. MORIN subverted that process by creating the discount code without Company A's authorization or knowledge. MORIN provided the discount code to customers who

paid him via check. That code enabled those customers to "buy" their travel package through the online portal for zero dollars. This process helped MORIN conceal his fraud: it resulted in the customers receiving their tickets (via the online booking system) while directing their payments to MORIN instead of to Company A.

6.  From or about January to May 2024, MORIN misdirected about $33,600 in payments for travel packages from individuals to his personal account.

7.  It was further part of the scheme that defendant MORIN misdirected reimbursements from Company A vendors to his personal bank account.

8.  For example, from or about March to May 2024, upon learning that the Hilton Garden Inn in Fort Myers, Florida, had received an over-payment from Company A, MORIN instructed the Hilton to mail a reimbursement check to Company A at his attention. MORIN then deposited that check, for about $2,000, into his personal bank account instead of providing it to Company A. When Company A detected that MORIN had misdirected this reimbursement, MORIN admitted to Company A executives that he had committed fraud.

9.  Similarly, from or about January through March 2024, upon learning that the Four Seasons Minneapolis owed Company A about $8,500, MORIN instructed the Four Seasons to mail a reimbursement check to him. MORIN then deposited that check into his personal bank account instead of providing it to Company A.

10.  Similarly, in or about 2023, upon learning that D'Amico Holding Company in Minneapolis, Minnesota owed Company A about $2,300, MORIN

instructed D'Amico to mail a reimbursement check to Company A at his attention. MORIN then deposited that check into his personal bank account instead of providing it to Company A.

11. On or about the dates listed below, in the State and district of Minnesota and elsewhere, the defendant,

### JOSEPH RICHARD MORIN,

as set forth below, for the purpose of executing the scheme described above, knowingly caused to be delivered by mail or by any private or commercial interstate carrier any matter or thing, including the following:

| Count | Date (on or about) | Mailing Details |
|---|---|---|
| 1 | January 2024 through May 2024 | A check from Individual 1 to Company A, at MORIN's attention, in the amount of about $10,005. |
| 2 | March 2024 through April 2024 | A check from the Hilton Garden Inn to Company A, at MORIN's attention, in the amount of about $2,000. |
| 3 | January 2024 through March 2024 | A check from the Four Seasons Minneapolis to Company A, at MORIN's attention, in the amount of about $8,500. |
| 4 | March 2024 through May 2024 | A check from D'Amico Holding Company to Company A, at MORIN's attention, in the amount of about $2,300. |

All in violation of Title 18, United States Code, Section 1341.

### FORFEITURE ALLEGATIONS

12. Counts One through Four of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

4

13. Upon conviction of one or more of the offenses alleged in Counts One through Four of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable such violations.

14. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                FOREPERSON